IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH M. CLINE | ) | CASE NO.  5:25-CV-00349 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| | ) | |

Plaintiff, Joseph M. Cline ("Plaintiff" or "Cline"), challenges the final decision of Defendant, Frank J. Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

In January 2022, Cline filed an application for SSI, alleging a disability onset date of July 2, 2017 and claiming he was disabled due to diabetes, adhesive capsulitis, anxiety, depression, morbid obesity, extrinsic asthma, neuropathy, and early stage renal failure.  (Transcript ("Tr.") 67.)  The application was

---

[1] On May 7, 2025, Frank J. Bisignano became the Commissioner of Social Security.

denied initially and upon reconsideration, and Cline requested a hearing before an administrative law judge ("ALJ").  (*Id*. at 104.)

On January 17, 2024, an ALJ held a hearing, during which Cline, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id*. at 34-65.)  On February 2, 2024, the ALJ issued a written decision finding Cline was not disabled.  (*Id*. at 19-29.)  The ALJ's decision became final on January 6, 2025, when the Appeals Council declined further review.  (*Id.* at 1-3.)

On February 20, 2025, Cline filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 6, 8, 9.) Cline asserts the following assignments of error:

1)  The ALJ erred at Step Three of the Sequential Evaluation when he failed to comply with the relevant Social Security Rulings, 14-2p and 19-2p, and find that the combination of Plaintiff's obesity and diabetes equaled a listing.

2)  The ALJ's RFC finding that Plaintiff could perform work at the light level of exertion was not supported by substantial evidence.

3)  The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms precluded him from engaging in substantial gainful activity on a full-time and sustained basis.

(Doc. No. 6 at p. 1.)

## II. EVIDENCE

### A.    Personal and Vocational Evidence

Cline was born in 1983 and was 40 years-old at the time of his administrative hearing (Tr. 36, 67), making him a "younger" person under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  He has a tenth-grade education.  (Tr. 40.)  He has no past relevant work.  (*Id*. at 28, 39.)

**B.     Relevant Medical Evidence[2]**

On January 6, 2022, Cline presented for an office visit. (*Id*. at 288.) His Type II Diabetes was well controlled, and he denied polydipsia, polyuria, and extremity pain. (*Id*.) He weighed 392 pounds. (*Id*. at 289.) A physical examination showed normal gait and posture, "5/5 normal muscle strength", and normal strength and tone of both upper and lower extremities. (*Id*. at 290.) No neurological deficits were noted. (*Id*.)

On June 2, 2022, Cline presented for a psychological evaluation. (*Id*. at 328.) He reported having the ability to do all activities of daily life. (*Id*. at 332.) He was diagnosed with generalized anxiety disorder. (*Id*. at 333.) His functional assessment stated he "would not have difficulties understanding, and remembering simple non-complex instructions." (*Id*. at 334.) Cline reported difficulties with attention and concentration under stress, but "was able to attend to all instructions and follow the flow of conversation." (*Id*.) He had "no trouble understanding or following simple commands", and "should be able to interact appropriately with peers and supervisors." (*Id*.)

On July 7, 2022, Cline presented for a medication refill appointment. (*Id*. at 339.) Diagnoses included "Type 2 Diabetes Mellitus, Controlled" and "Neuropathy of Right Foot". (*Id*. at 340.) He weighed 418.8 pounds with a Body Mass Index ("BMI") of 56.79. (*Id*. at 339.) He had normal gait, normal upper and lower extremity motor strength and functioning, with full range of motion in his extremities. (*Id*. at 339-340.) Cline continued medications for diabetes, neuropathy, and hypertension. (*Id*. at 341.)

On November 5, 2022, Cline presented for a physical consultative examination. (*Id*. at 354.) Cline's weight was not obtained because his weight exceeded the limits of the 350-pound scale maximum. (*Id*. at 357.) Cline was noted to have morbid obesity, some limited range of motion in his bilaterial shoulders, and

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

no lower extremity deficits. (*Id*. at 350.) The provider found Cline has no limitations sitting, standing or walking, no significant limitations with lifting or carrying weight, no limitations on bending, stooping, crouching and squatting, no limitations on reaching, grasping, handling, fingering, and feeling, and no relevant visual, communicative or workplace environmental limitations. (*Id*.)

On December 8, 2022, Cline presented for management of his diabetes. (*Id*. at 369.) His A1C level was 8.5%. (*Id*.) His weight was 435 pounds. (*Id*. at 373.) Aerobic exercise was recommended. (*Id*.) Diagnoses included diabetes mellitus type 2 with hyperglycemia, hypercholesterolemia, hypertension, class 3 severe obesity with serious comorbidity and BMI. (*Id*. at 372-73.)

On June 22, 2023, Cline presented for a routine office visit. (*Id*. at 422.) Diagnoses included hypertension, hypercholesterolemia, type 2 diabetes with diabetic neuropathy, gastroesophageal reflux disease, class 3 severe obesity, and generalized anxiety disorder. (*Id*. at 421.) His weight was 440 pounds with a BMI of 61.42. (*Id*. at 440, 442.) He was referred for a nutrition therapy appointment with a registered dietitian. (*Id*. at 422.) The provider recommended aerobic exercise. (*Id*. at 427.)

On March 16, 2023, Cline presented for a new patient office visit. (*Id*. at 457.) He was noted to have normal range of motion and a diabetic foot exam revealed heel numbness. (*Id*. at 459-460.)

On June 28, 2023, Cline presented for a psychological evaluation. (*Id*. at 483.) He was diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder. (*Id*. at 487.) Cline stated he could attend to activities of daily living, including "daily hygiene, perform household chores, shop for groceries, and prepare basic meals but was slowed by fatigue and low motivation." (*Id*. at 485.) The provider opined Cline would have "no difficulty maintaining attention and focus" but that his symptoms of depression and anxiety "could result in increased worry and a corresponding decrease in attention and concentration." (*Id*. at 488.) The provider wrote Cline "functions within adequate limits of intellectual functioning" and that "critical supervisory feedback" could lead to emotional instability and difficulty developing and maintaining

4

appropriate co-worker relationships. (*Id*.) The provide thought Cline's symptoms of depression and anxiety could "compromise his ability to respond to work pressures." (*Id*.)

On September 28, 2023, Cline presented for a routine office visit. (*Id*. at 508.) His weight was 421 pounds. (*Id*. at 510.) The provider discussed his need to lose weight. (*Id*. at 511.) His blood pressure was controlled, and he denied symptoms of hyperglycemia. (*Id*.) Cline reported positive treatment of his hyperlipidemia and denied side effects of muscle weakness or achiness. (*Id*.) Cline had normal gait, no back pain, and normal range of motion. (*Id*. at 510.)

## C. State Agency Reports

### 1. Mental Impairments

On June 19, 2022, Karla Delcour, Ph.D., reviewed the claim file and opined that Cline had a mild limitation interacting with others but did not have a current severe mental impairment. (*Id*. at 70.)

On July 9, 2023, on reconsideration, Jacob Tendler, M.D., reviewed additional records and opined that Cline has "medically determinable mental impairments" that do not meet a listing singly or in combination. (*Id*. at 78.) Tendler opined Cline "can perform one-two step command-instruction" and would "do best in a low stress environment without demands for high productivity, sustained pace, or strict deadlines." (*Id*.) Tendler found Cline's depression and anxiety were severe impairments. (*Id*. at 79.)

### 2. Physical Impairments

On November 16, 2022, Stephen Koch, M.D., reviewed the claim file and opined that Cline could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk six hours in an eight-hour workday, sit about six hours in an eight-hour workday, frequently climb ramps or stairs, balance, stoop, kneel, and crawl. (*Id*. at 72.) Dr. Koch found no visual, communicative, environmental limitations, or manipulative limitations except for reaching overhead. (*Id*.)

5

On March 21, 2023, on reconsideration, Mehr Siddiqui, M.D., affirmed Dr. Koch's findings. (*Id*. at 83.)

**D.      Hearing Testimony**

During the January 17, 2024 hearing, Cline testified to the following:

> • He completed tenth grade in school. (*Id*. at 40.) He stepped away from school to care for his ailing grandmother. (*Id*.) He is right-handed. (*Id*.) He is currently six feet tall and weighs 421 pounds. (*Id*. at 41.) He tried to lose weight by walking, but he got tired very quickly. (*Id*. at 55.) He tried dieting to lose weight, which did help. (*Id*. at 55-56, 57.) There were times he was "stress eating". (*Id*. at 56.) He does not have a driver's license and lives with his mother. (*Id*. at 41) He does not have any children. (*Id*.)

> • He takes medications for diabetes, neuropathy, blood pressure, cholesterol, anxiety and depression, and an inhaler when needed. (*Id*. at 41-42.) He uses the inhaler a couple times a month. (*Id*. at 42.) He does not experience side effects from the medications except maybe excessive urination. (*Id*.) He experiences high blood sugar two times per week and low blood sugar once or twice a week. (*Id*. at 43.) When his blood sugar is too high or too low, he can "bring it under control relatively quick." (*Id*.) His diabetes has improved from the past, but his doctors still want his A1C levels lower. (*Id*.) He discussed an insulin pump with his doctor, but he declined it. (*Id*. at 44.)

> • Neuropathy causes pain and numbness in his feet if he is standing for longer than five to ten minutes. (*Id*.) Neuropathy does not affect his hands. (*Id*.) Gabapentin helps "pretty well" with his neuropathy. (*Id*.) He does not have problems with sitting. (*Id*.) His neuropathy is worse in the cold. (*Id*. at 45.) He rubs his feet to help relieve the pain. (*Id*.) He does not wear compression stockings. (*Id*.) His diabetes doctor inspects his feet at his appointments. (*Id*.)

> • His anxiety and depression cause insomnia. (*Id*.) It "comes and goes." (*Id*.) He has had insomnia several times in one week and not at all for several weeks. (*Id*.) He is unable to fall asleep, and when he does, he is up every half hour to an hour. (*Id*. at 46.) He tries not to take naps. (*Id*.)

> • Walking for extended periods of time causes him to get out of breath and he uses his inhaler to regain his breath. (*Id*.) Bleach smells bother his breathing. (*Id*.) He does not smoke and never smoked. (*Id*.)

> • His blood pressure is controlled through medications. (*Id*. at 47.) Medication helps "a bit" with his depression and anxiety. (*Id*.) He tried

mental health counseling, and it didn't go well. (*Id*.) He didn't think the therapist was a good fit for him and made him "feel a little defeated" so he stopped going. (*Id*. at 48.) He feels anxious when he is around people in a crowded place like a grocery store. (*Id*.) He had a panic attack once or twice in the past. (*Id*.) His last panic attack was maybe a year ago. (*Id*.) When he feels anxious, he gets short of breath. (*Id*. at 49.) If he starts to get worked up, he will go and wait in the car. (*Id*. at 49-50.) He does not feel anxious at home. (*Id*. at 50.) His depression causes lack of appetite and feeling like he does not want to do anything. (*Id*. at 50-51.)

• The last time he worked was fall of 2016 at Walmart stocking shelves. (*Id*. at 51.) He worked for two to three weeks and then quit because he was physically "tiring out" and couldn't get through the shift. (*Id*.) His bosses told him he wasn't doing the job quick enough which increased his anxiety. (*Id*.)

• His mom works during the day. (*Id*. at 52.) When his mom is at work he reads, watches TV, and plays video games. (*Id*.) His mom asks him to do "light stuff" around the house like put dishes away and dust off countertops. (*Id*. at 52.) He does not handle "heavy" or "strenuous" stuff. (*Id*. at 53.) His mom does the laundry. (*Id*.) He can cook small things, like microwave dinners, bowls of cereal, and sandwiches. (*Id*.) His mom takes him to doctor appointments. (*Id*.) He has no siblings and does not talk to any family members regularly. (*Id*. at 54.) He has a friend that no longer lives nearby that he talks to once or twice a week. (*Id*.) He doesn't really leave the house except to go to the store and doctor appointments. (*Id*.)

The ALJ confirmed Cline had no past work. (*Id*. at 61.) The ALJ then posed the following hypothetical question to the Vocation Expert ("VE"):

For these questions, please consider a younger individual born in 1983. The younger individual has a limited education, no high school diploma, no GED. For the first question we'll be in the light range, so please consider an individual that can lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently. This individual can sit for six hours, stand and/or walk for six hours in a normal workday. The hypothetical individual cannot climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs; can frequently stoop, kneel, crouch, and crawl; can frequently reach overhead bilaterally. The hypothetical individual must avoid concentrated exposure to dust, fumes, gases, odors, and poorly ventilated areas. The hypothetical individual is limited to occasional interaction with the general public that does not involve arbitration, negotiation, or confrontation. The hypothetical individual cannot perform assembly line work or work that involves strict production quotas, and would be limited to handling occasional workplace changes that are gradual and explained in advance.

7

(*Id*. at 61-62.) The VE testified the hypothetical individual would be able to perform representative jobs in the economy, such as a Mail Clerk, Price Marker, and Office Helper. (*Id*. at 62.)  The ALJ asked a second hypothetical:

> If the individual were limited to a five-hour workday – so let me say, combined sit, stand, and walk, no more than five hours with the other limitations from #1, would I be correct there'd be no competitive employment at a full-time level as we discuss it here at Social Security?

(*Id*. at 62-63.) The VE responded that the ALJ was correct. (*Id*. at 63.) The ALJ asked a third question: "If we take that first hypothetical, but add a limitation that, because of the types of issues we've discussed today, the individual will be off-task in the work setting 33% of the day on an ongoing basis, any jobs in your opinion?" (*Id*. at 63.) The VE responded, "No, sir. That's from my experience." (*Id*.) The VE stated the threshold for off-task is only ten percent of the time. (*Id*.)

For his fourth hypothetical, the ALJ asked, "if we take #1, if we consider normal breaks and a normal lunch period, but add to that two additional 15-minute breaks at unscheduled, unannounced times throughout the workday on an ongoing basis, would the jobs you cited or any other jobs exist?" (*Id*.) The VE responded, "No, I don't believe so. Again, from my experience." (*Id*.) Cline's attorney asked, ". . . at what point an individual being absent from the workplace becomes work preclusive, especially in the unskilled work environment?" (*Id*. at 64.) The VE answered, ". . . one time a month, no more." (*Id*.)

### III.  STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4)*,* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d

8

504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 19, 2022, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: Diabetes Mellitus, neuropathy, obesity, asthma, depressive disorder, and generalized anxiety disorder (GAD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no ladders, ropes or scaffolds, can occasionally climb ramps and stairs.

Frequently stoop, kneel, crouch, and crawl. Frequently reach overhead with the bilateral upper extremities. Avoid concentrated exposure to dusts, fumes, gases, odors, and poorly ventilated areas. Occasional interaction with the general public that does not involve arbitration, negotiation or confrontation. Cannot perform assembly line work or work that involves strict production quotas. Is limited to handling occasional workplace changes that are gradual and explained in advance.

4. The claimant has no past relevant work (20 CFR 416.965).

5. The claimant was born on September 9, 1983 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

6. The claimant has a limited education (20 CFR 416.964).

7. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

9. The claimant has not been under a disability, as defined in the Social Security Act, since January 19, 2022, the date the application was filed (20 CFR 416.920(g)).

(Tr. 21-29.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by

10

substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the

11

Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

### A.  Step Three.

In his first assignment of error, Cline argues the ALJ erred by failing to consider his diabetes with neuropathy. (Doc. No. 6 at 7-11.) Cline asserts the ALJ did not mention SSR 14-2p. (*Id*. at 8.) Cline argues his testimony and the medical evidence establish his diabetic neuropathy and adhesive capsulitis affected his feet and upper extremities. (*Id*. at 9.) Cline claims the neuropathy would render him unable to stand or walk for six hours in a workday, which is the light level of exertion. (*Id*.) Cline states that SSR 19-2p "directs an ALJ to consider the claimant's obesity in combination with other impairments" which he alleges the ALJ failed to do. (*Id*. at 10.) Cline claims the ALJ's conclusion that Cline could perform work at the light level of exertion "was contrary to the medical evidence in this matter." (*Id*.) Cline argues the ALJ did not address whether the combination of his severe impairments equal a listing. (*Id*.) Cline asserts the failure to consider the combination of his diabetic neuropathy and obesity necessitates remand. (*Id*. at 11.)

In response, the Commissioner argues that there was no requirement the ALJ cite a specific SSR. (Doc. No. 8 at 10.) The Commissioner states the ALJ properly evaluated Cline's impairments because he acknowledged the diabetic neuropathy diagnosis, found it severe, and limited Cline to a reduced range of light work, which was consistent with the state agency physician opinions. (*Id*.) In response to Cline's argument that the ALJ did not consider the combination of obesity and diabetic neuropathy, the Commissioner contends the ALJ considered listing 11.14, for neuropathy, and concluded Cline did not have an impairment or combination of impairments that equaled the listing. (*Id*.) The Commissioner asserts the ALJ considered Cline's obesity in combination with his diabetes in steps two, three, and four. (*Id*. at 11.)

The Commissioner argues the ALJ incorporated the effect obesity had on Cline when he found the PAMFs persuasive and incorporated the effect obesity had on his ability to work into the RFC he constructed. (*Id*.)

At step three of the disability evaluation process, a claimant will be found disabled if his impairment(s) meets or equals one of the listings in the Listing of Impairments. *Dunlap v. Comm'r of Soc. Sec.*, No. 5:21-CV-136, 2022 WL 1462011, at *12 (N.D. Ohio Jan. 28, 2022), *report and recommendation adopted sub nom. Dunlap v. Kijakazi*, No. 5:21-CV-00136, 2022 WL 1025697 (N.D. Ohio Apr. 6, 2022), citing 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears the burden of establishing that his condition meets or equals a listing. *Id*., citing *Thacker v. Soc. Sec. Admin.*, 93 Fed. App'x 725, 727-728 (6th Cir. 2004) (citing *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). Thus, a claimant "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Id*. at 728 (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)). "Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing" and a claimant "must satisfy all the criteria to meet the listing." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011) (internal quotation marks omitted).

At step two, the ALJ found Cline had the following severe impairments: Diabetes Mellitus, neuropathy, obesity, asthma, depressive disorder, and generalized anxiety disorder. (Tr. 21.) At step three, the ALJ found Cline did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)." (*Id*. at 22.) The ALJ wrote:

> Under the listing of impairments in Appendix 1, Subpart P, Regulations Part 404, there are no indicated findings by treating or examining physicians that satisfy the requirements of any listed impairment. All of the listings were considered in reaching this finding, with specific emphasis on listings 1.18, 3.03, 11.14. Therefore, I do not find that the claimant has an impairment or

13

combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(*Id*.) Cline asserts that, according to SSR 14-2p, "a person with diabetes and obesity may have more severe complications than the effects of each of the impairments considered separately." (Doc. No. 6 at 10.) Cline argues the ALJ erred when he failed to consider the combination of Cline's diabetic neuropathy and obesity. (*Id*. at 11.) Yet, the ALJ expressly wrote that he considered all the listings, and that Cline did not have an impairment or combination of impairments that met one of the listings. (Tr. 22.) *See Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990) (finding the Commissioner properly considered impairments in combination, as evidenced by the decision's reference to "combination of impairments" and a RFC that addressed limitations caused by multiple impairments.) There is no requirement that a particular SSR be specifically cited in conducting an analysis that follows its guidance. *See Dodson v. Comm'r of Soc. Sec.*, No. 5:18-cv-02263, 2019 WL 6841771, at *2 (N.D. Ohio Dec. 16, 2019). Further, the ALJ considered listing 11.14 for peripheral neuropathy and found Cline did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 22.) The ALJ's determination is consistent with the state agency physicians, who considered listing 11.14 and found it was not met. (*Id*. at 66, 70, 80.) Here, the ALJ considered Cline's obesity through the sequential evaluation. (*Id*. at 21-25.) Obesity was found to be a severe impairment, it was considered in combination with the listed impairments at step three, and was accounted for in the RFC. (*See id*. at 21, 22, 25.) At step four, the ALJ concluded Cline could perform light work, but "reduced postural changes due to his obesity and neuropathy . . ." (*Id*. at 25.)

The undersigned finds the ALJ considered the combination of Cline's obesity and diabetes. There is no error.

**B. RFC Determination**

In his second assignment of error, Cline argues the ALJ's RFC finding that Plaintiff could perform work at the light level of exertion was not supported by substantial evidence. (Doc. No. 6 at 11-13.) Cline asserts the ALJ's determination that he can perform work at the light level of exertion is not supported by substantial evidence because he could not stand or walk six hours in a workday. (*Id*. at 12.) Cline states the ALJ's reliance on Dr. Oh's consultative examination was error because although Dr. Oh found Cline would have no limitations with sitting, standing, or walking, and no significant limitations with lifting or carrying weight, he did have some limitations due to his obesity. (*Id*. at 13.) Cline argues the ALJ's interpretation of this examination as recommending a light level of exertion was in error and not supported by the evidence. (*Id*.)

In response, the Commissioner argues the ALJ's conclusion that Cline could perform a reduced range of light work is supported by substantial evidence in the form of the PAMFs and other evidence discussed by the ALJ. (Doc. No. 8 at 13.) The Commissioner states the ALJ did not solely rely on Dr. Oh's opinion and noted that Dr. Oh "did not provide greater limitations secondary to the claimant's morbid obesity affecting postural changes nor [his] diabetes with neuropathy which does not seem to be considered in assessing the claimant's limitations." (*Id*. at 14, citing Tr. 27.) The Commissioner contends the ALJ assessed more restrictions than found by Dr. Oh and found the PAMFs, that limited Cline to light work with additional limitations, were more persuasive than Dr. Oh's opinion. (*Id*.).

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the

relevant evidence (20 C.F.R. § 404.1546(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249,

16

2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

In the RFC analysis, the ALJ analyzed Cline's ability to be on his feet as follows:

> I considered the claimant's testimony regarding his statement of limitation being on his feet; however, examination shows full strength in his lower extremities and during the consultative examination with Dr. HO [sic], he was assessed to have no limitations standing or walking. Examinations by Dr. Nguyen are consistent with Dr. HO's [sic] assessment as well. The claimant reported that he did yard work and exercised by walking. Moreover, during his diabetic visit, he was encouraged to engage in aerobic exercise which does not support physical limitations precluding walking or standing. Thus, his ability to walk and stand within the parameters of a light residual functional capacity is supported by the evidence. However, I reduced postural changes due to his obesity and neuropathy, as well as limited reaching overhead to frequent due to his shoulder pain. While he has not presented with acute exacerbation of asthma, the claimant reported using an inhaler and the evidence supports his diagnosis of asthma; therefore, I provided for environmental exposure to irritants.

(Tr. 25.) The ALJ went on to write:

> I am mostly persuaded by Dr. OH's [sic] opinion based on the examination he performed in November 2022. While his examination was mostly unremarkable, he assessed a light level of exertion but did not provide greater limitations secondary to the claimant 's [sic] morbid obesity affecting postural changes nor has diabetes with neuropathy which does not seem to be considered in assessing the claimant's limitations.

(*Id.* at 27.)

17

Substantial evidence supports the RFC findings. The ALJ considered Cline's testimony concerning his physical impairments, as well as medical treatment records, and the examination performed by Dr. Oh. (*Id*. at 25-28) In doing so, the ALJ properly considered several findings that undercut Cline's disability. *Miner v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971)).

While Cline interprets the records differently, the findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772-73 (6th Cir. 2001). In the Sixth Circuit an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Again, it is the ALJ's job to weigh the evidence and resolve conflicts, and he did so here. While Cline would weigh the evidence differently, it is not for the Court to do so on appeal.

There is no error.

## C. Symptom Evaluation

In his third assignment of error, Cline argues the ALJ failed to evaluate Cline's symptoms pursuant to SSR 16-3p. (Doc. No. 6 at 13-18.) Cline contends the ALJ erred by failing to find that his symptoms, including pain, precluded him from engaging in substantial gainful activity on a full-time and sustained basis. (*Id*. at 13.) Cline states the ALJ found his statements regarding his difficulties standing, walking, and using his arms not fully consistent with the medical evidence, and that the ALJ "failed to articulate any supportable rationale for his finding . . ." (*Id*. at 15.) Cline argues the ALJ provided "insufficient analysis" and therefore not comply with SSR 16-3p. (*Id*.) Cline claims the ALJ found Dr. Krabbe's opinion on his mental health persuasive but did not include any limitations set forth by Dr. Krabbe. (*Id*. at 16.) Cline asserts

18

the failure to include the limitations or explain their omission was harmful error. (*Id*. at 17.) Cline claims the ALJ failed to consider psychological impairments in combination with the diabetic neuropathy and obesity. (*Id*.)

In response, the Commissioner argues the ALJ "gave more than an adequate explanation of his consideration of Plaintiff's subjective complaints, so his findings must stand . . ." (Doc. No. 8 at 15.) The Commissioner notes the ALJ did explain why he found Cline's statements inconsistent with the medical evidence. (*Id*. at 15, citing Tr. 24-26.) The Commissioner contends the ALJ also considered "Plaintiff's treatment regimen", his "allegations regarding his mental impairments", and the PAMFs of state agency physicians. (*Id*. at 16.) The Commissioner argues the ALJ's RFC "limiting Plaintiff to occasional interaction with the public; no assembly line work or strict production quotas; and occasional workplace changes that are gradual and explained in advance is consistent with Dr. Krabbe's opinion." (*Id*. at 17.)

In his reply brief, Cline reiterated his contention that the ALJ failed to include Dr. Krabbe's reported limitations in the RFC despite finding the opinion persuasive. (Doc. No. 9 at 2-3.)

A two-step process is used to evaluate an individual's symptoms. (20 CFR § 404.1529(c)(3), 416.929(c)(3); *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304.) At step one, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. (*Id*.; SSR 16-3p, 2017 WL 5180304 at *3.) At step two, the ALJ evaluates the intensity, persistence, and limiting effects of the claimant's symptoms. (*Id*. at *4.) "[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . [an ALJ] must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." (*Id.* at *5.)

An ALJ may consider the following factors when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

(*Id*. at *7-8.) An ALJ is not required to analyze all seven factors. *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *16 (N.D. Ohio June 4, 2018), *report and recommendation adopted,* No. 1:17CV1118, 2018 WL 3093696 (N.D. Ohio June 22, 2018), citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

In evaluating complaints of pain or other symptoms, an ALJ may properly consider the credibility of the claimant. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997), citing *Kirk v. Secretary of Health and Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id*., citing *Villarreal v. Secretary of Health and Human Servs.,* 818 F.2d 461, 463 (6th Cir.1987). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id*. citing *Beavers v. Secretary of Health, Educ. and Welfare,* 577 F.2d 383, 386–87 (6th Cir.1978).

"An ALJ's determination of subjective evidence receives great deference on review." *Jones v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-01257-DAC, 2022 WL 3155823, at *16 (N.D. Ohio Aug. 8,

2022), citing *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012). "Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints or the conclusions drawn from them." *Id.*, citing *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

Here, the ALJ analyzed Cline's symptoms, devoting nearly two single spaced pages to his physical symptoms alone. (Tr. 24-25.) The ALJ wrote, in part:

> The claimant testified that he is six feet tall and weighs 421 pounds. He lives with his mother and does not have children. He has never had a driver's license. He has diabetes and his last A1c was 7.6. He becomes dizzy when his sugar is low, and his sugar becomes too high or two low twice per week, but he is able to bring it under control. He takes medication for neuropathy and diabetes, as well as Vistaril for anxiety. He uses an albuterol inhaler a couple times a month. His neuropathy causes burning, tingling and pain in his feet if he stands too long but it does not affect his hands. He stated that Gabapentin is helpful. He stated that his doctor recommended that he walk an hour a day for weight control. However, he testified that he can be on his feet for 5-10 minutes. Sitting does not affect his feet. He uses his inhaler if he has to walk for long periods. Bleach and disinfectant affect his breathing and he does not smoke. He felt that his medications prescribed by his primary care physician help his anxiety. He tried therapy several years ago, but it did not go well.

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with evidence supporting greater ability than the claimant alleges.

(*Id*. 23-24.) The ALJ went on to detail medical evidence, including the efficacy of his diabetes and neuropathy medications; a physical examination detailing Cline's complaints of adhesive capsulitis causing constant pain in his shoulders and treatments including steroid injections and physical therapy were effective

in treating same; a diabetic foot exam revealing heel numbness; physical examinations revealing normal reflexes, range of motion, gait, cardiac, and musculoskeletal function; medical providers repeatedly recommending aerobic exercise; and activities of daily living that included caring for personal needs, performing household chores, shopping for groceries, and preparing basic meals. (*Id*. 24-26.)

The ALJ properly followed the two-step process for evaluating Cline's symptoms. At step-one, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . ." (*Id*. 24.) The ALJ ultimately found:

> . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with evidence supporting greater ability than the claimant alleges.

(*Id*. 24.) The ALJ considered the objective medical evidence, including diagnoses, examination results, medication effectiveness and lack of adverse side effects. (*Id*. at 24-28.) Moreover, the ALJ discussed several of the seven factors set forth in SSR 16-3p for finding Cline's impairments not as debilitating as he alleged. (*Id*.) He considered Cline's testimony, activities of daily living, the location, duration, frequency, and intensity of his symptoms, medication side effects or lack thereof, and scope of treatment. (*Id*.)

An ALJ must follow the two-step process for evaluating a claimant's symptoms and as part of that evaluation, an ALJ must consider whether the symptoms are consistent with the objective medical evidence and he did so here. SSR 16-3p, 2017 WL 5180304 at *5. Substantial evidence supports the ALJ's decision. See *Rogers,* 486 F.3d at 241. Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court does not find the ALJ's symptom analysis was insufficient.

22

Cline argues the ALJ found Dr. Krabbe's opinion persuasive but did not include any of his mental health limitations. (Doc. No. 6 at 16.) This is simply incorrect. The ALJ wrote the following, regarding Dr. Krabbe's opinion:

> Dr. Krabbe diagnosed the claimant with major depressive disorder and generalized anxiety disorder. He opined that in the area of understanding, carrying out and remembering instructions, the claimant performed adequately on tasks to assess remembering and understanding. He did not report problems learning in school or work related tasks. In sustaining concentration and persisting in work-related activity, the claimant displayed adequate tasks persistence answering questions and he showed no distraction. However, he described depression and anxiety that could result in increased worry and decrease in attention and concentration. In social interaction, Dr. Krabbe noted that on past work performance he described potential impacts of mental health problems on work performance which may lead to emotional instability when criticized. In dealing with normal pressures in a competitive work setting, he described symptoms of anxiety that may compromised his ability to respond to work pressures but he was never psychiatrically hospitalized and he displayed appropriate responses an affect when discussing past and current pressures (9F).
>
> * * *
>
> I am persuaded by Dr. Krabbe's opinion which is consistent with the claimant's anxiety. His opinion that the claimant's anxiety and depression could result in increased worry and decrease in attention and concentration is consistent with his evaluation. In social interaction, Dr. Krabbe his past work performance noting it may lead to emotional instability when criticized. In dealing with normal pressures in a competitive work setting, he considered the claimant's response to stress by having a panic attack.

(*Id*. 26-27.) The ALJ expressly included the following mental limitations in his RFC: "Occasional interaction with the general public that does not involve arbitration, negotiation or confrontation. Cannot perform assembly line work or work that involves strict production quotas. Is limited to handling occasional workplace changes that are gradual and explained in advance." (*Id*. at 23.) The ALJ further explained the mental limitations he included in the RFC, writing:

> I considered the claimant's psychological limitations relative to his anxiety and difficulty with interaction in limiting the claimant to occasional interaction with the public and precluding activities associated with

23

> interaction that may lead to greater anxiety. Additionally, due to depression and anxiety that could result in increased worry and decrease in attention and concentration, I limited work that did not involve strict production quotas as well as limited workplace changes to occasional.

(*Id*. at 27.) The ALJ did include mental health limitations in his RFC, consistent with Dr. Krabbe's opinion. There is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim. *Reeves v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

There is no error.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: January 21, 2026
         *s/ Jonathan Greenberg*
         Jonathan D. Greenberg
         United States Magistrate Judge

## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**